Wanamaker, J.
The main question in this case arises out of Section 2713, General Code, which reads:
‘ ‘ On examination of the county treasury, if it appears by the report of the examiner or examiners that an embezzlement has been committed by the county treasurer, the county commissioners shall forthwith remove the treasurer from office, and appoint some person to fill the vacancy thereby created. The person so appointed shall give bond, and take the oath of office prescribed for county treasurers.”
It is plain that this section nowhere provides for notice to the county treasurer, nor for any hearing upon the charge of embezzlement, as contained in the report.
The county commissioners acted summarily and ex parte under the plain provisions of the statute, which it is claimed are fully authorized by Section 6, Article X, of the Ohio Constitution adopted in 1851, which reads:
“Justices of the peace, and county and township officers, may be removed, in such manner and for such cause, as shall be prescribed by law.”
It is claimed by the relator that Section 2713, General Code, is plainly pursuant to Section 6, Article X of the Constitution, and that by the force of this statute what the board of county commissioners did *483 was abundantly warranted both under tbe statute and tbe constitution.
In answer thereto, the defendant depends for his defense upon his rights under Section 38, Article II of the Ohio Constitution as adopted in 1912, which reads:
“Laws shall be passed providing for the prompt removal from office, upon complaint and hearing, of all officers, including state officers, judges and members of the general assembly, for any misconduct involving moral turpitude or for other cause provided by law; and this method of removal shall be in addition to impeachment or other method of removal authorized by the constitution.”
In plain phrase this section provides for “complaint and hearing” before removal, and, where Section 38 applies, any statute failing to measure up to the requirements for removal is plainly faulty and must fail as a constitutional enactment.
It is claimed, however, that Section 38, Article IT, although adopted sixty years later than Section 6, Article X, does not supersede Section 6 or in any wise modify it, because, at the close of Section 38, this language appears: “And this method of removal shall be in addition to impeachment or other method of removal authorized by the constitution.”
It should be here noticed that the words “in addition to impeachment or other method of removal” do not relate to any “method of removal” provided by statute, but a method of removal provided or authorized by the constitution.
Up to that time, as is well known, the constitution provided, in Section 23, Article II:
*484 “The house of representatives shall have the sole power of impeachment, hut a majority of the members elected must concur therein. Impeachments shall be tried by the senate; and the senators, when sitting for that purpose, shall be upon oath or affirmation to do justice according to law and evidence. No person shall be convicted without the concurrence of two-thirds of the senators.”
Section 24, Article II, reads:
“The governor, judges, and all state officers, may be impeached for any misdemeanor in office; but judgment shall not extend further than removal from office, and disqualification to hold any office under the authority of this state. The party impeached, whether convicted or not, shall be liable to indictment, trial, and judgment, according to law.”
Section 17, Article IV, provides for the removal of judges as follows:
“Judges may be removed from office, by concurrent resolution of both houses of the general assembly, if two-thirds of the members, elected to each house, concur therein; but, no such removal shall be made, except upon complaint, the substance of which shall be entered on the journal, nor, until the party charged shall have had notice thereof, and an opportunity to be heard.”
Where the constitution provides a method for the removal of public officers, it is obvious that the constitutional amendment provided in Section 38, Article II, was intended to preserve such constitutional method. It is equally apparent that it was not thereby intended to preserve any other method of removal, such as provided by the statute, which would in any wise conflict with Section 38.
*485 Due Process op Law.
Probably no other phrase known to the American and English law comprehends so much basically vital in the protection of human rights and the redress of human wrongs as the phrase “due process of law.” Exact definition within lineal limits has not yet been attempted; but the old constitutional provisions, federal and state, that no person shall be deprived of life, liberty or property without due process of law, are the most essential guarantee of the security of our liberties and the stability of our law.
Various definitions have from time to time been announced: “ ‘Due process of law’ in each particular case means such an exertion of the powers of government as the settled maxims of the law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs.” (8 Cyc., 1080, and cases cited.) In the celebrated Dartmouth College case, more than a century ago, the immortal Webster, than whom there probably has not been a greater constitutional lawyer, contended in his brief that this primary and paramount phrase of our law should be defined as follows:
“By the law of the land is most clearly intended the general law; a law, which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities, under the protection of the general rules which govern society.”
*486 Various other definitions have been from time to time announced from various courts , and writers, as follows:
“A trial according to some settled course of proceeding.”
“Judicial proceedings according to the courts and usage of the common law.”
“A trial by court of justice, according to the regular and established course of judicial proceedings.”
“Process due according to the law of the land.”
“Some legal procedure in which the person proceeded against if he is to be concluded thereby, shall have an opportunity to defend himself.”
These several definitions, agreeing in all essential particulars, are such as the court of reason and conscience would sanction as the very A, B, C of simple and substantial justice. All constitutions and laws known to us Americans must .be interpreted and applied with due regard for this cornerstone of every commonwealth. Whether or not it be expressly written into our constitutional and statutory provisions, it is to all essential purposes there, by the clearest intendment and implication.
Probably no more representative body of the spirit of humanity and justice characterizing the 20th century ever assembled in Ohio than the Constitutional Convention of 1912. It placed a new interpretation, new extensions and new limitations upon this phrase “due process of law.”
Relating to the removal of public officers believed to be derelict or faithless in their public service, so much so that the honesty and efficiency of that service required their removal, the members of that convention wrote into the organic law the following provision:
*487 “Laws shall be passed providing for the prompt removal from office, upon complaint and hearing, of all officers, including state officers, judges and members of the general assembly, for any misconduct involving moral turpitude or for other cause provided by law; and this method of removal shall be in addition to impeachment or other method of removal authorized by the constitution.”
It should be noted that this section clearly and concretely recognizes Ohio’s obligation to the cardinal doctrines included within this phrase, “due process of law.”
It must have been clearly intended that a “complaint and hearing” should be allowed “to all officers.”
This clear, constitutional, protective grant to the public officers squares at all points of the compass with Webster’s basic doctrine:
“A law, which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. ’ ’
It may be said that this is not a criminal trial. True. But it is no less a condemnation for a crime, followed by a penalty, the ousting of a man from public office by three men, servants of the people it is true, but hardly qualified to put out of office without a hearing a public official who has been put into office by the majority votes of the sovereign people.
What the constitution grants, no statute can take away.
By virtue of the constitutional amendment of 1912, particularly Section 38, Article II, and the schedule attached at the end of the amendments of 1912, all statutes then in force inconsistent with any *488 of the new amendments of ¡the constitution are by force of that schedule repealed.
•This doctrine was approved and followed in State, ex rel. City of Toledo, v. Lynch Aud., 88 Ohio St., 71, citing and approving the case of Cass v. Dillon, 2 Ohio St, 607.
Judge Shauck, in the opinion, at page 92, states the doctrine as follows:
“It follows.that all laws in force when the latter took effect, and which were not inconsistent with it [the new constitution], would have remained in force without an express provision to that effect; and all inconsistent laws fell simply because they were inconsistent; in other words, all repugnant laws were repealed by implication. The conclusion also results from the express provision of the general schedule to the present amendments: ‘All laws then in force [when the adopted amendments took effect] not inconsistent- therewith shall continue in force until amended or repealed.’ ”
Section 2713, General Code, being clearly inconsistent with and irreconcilable with the new constitutional amendments of 1912, particularly Section 38, Article II, is repealed by force of the adoption of that amendment, and is without force and effect so far as it relates to the removal of the' county treasurer, from office without the “complaint and hearing” provided for in the amendment.

Judgment affirmed.

Marshall. C. J., Johnson, Hough, Robinson, Jones and Matthias, JJ., concur.